**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AC HOLDCO, INC., et al., | |
| Plaintiffs, | Civil Action No. 20-9211 (MAS) (ZNQ) |
| v. | **MEMORANDUM OPINION**<br>**FILED UNDER TEMPORARY SEAL** |
| BEABLE EDUCATION, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon two Motions filed by Defendants Beable Education, Inc. ("Beable"), and Saki Dodelson ("Dodelson") (collectively, "Defendants"): (1) a Motion to Dismiss Plaintiffs AC Holdco, Inc. ("AC Holdco") and Achieve3000, Inc.'s ("Achieve3000") (collectively, "Plaintiffs") Complaint (ECF No. 24); and (2) a Motion to Take Judicial Notice (ECF No. 26). Plaintiffs opposed both Motions (ECF Nos. 33, 35), and Defendants replied (ECF Nos. 37, 39.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motions are denied.

## I. BACKGROUND[1]

Achieve3000 "is an industry leader in providing differentiated literacy instruction, products, and services to schools and students nationwide." (Compl. ¶ 25, ECF No. 4.) Its core

---

[1] The Court writes for the parties, who are familiar with the factual and procedural history of this matter. The Court, therefore, recites only those facts necessary to resolve the instant motions.

product "is a supplemental online literacy program that provides nonfiction reading content to students in grades pre-K through grade 12" to "help[] [the] students advance their reading skills by providing differentiated online instruction[.]" (*Id.* ¶ 26.) "Dodelson co-founded Achieve3000 in 2001 . . . and, in her capacity as CEO, built Achieve3000 into a successful business." (*Id.* ¶ 3.) In 2015, AC Holdco acquired Achieve3000 and retained Dodelson as CEO of the company. (*Id.* ¶¶ 3–4.) As part of the acquisition, AC Holdco and Dodelson executed an employment agreement that, among other things, contained "non-competition and non-solicitation provisions and other provisions designed to prohibit Dodelson from taking or using the [c]ompany's proprietary information following termination of her employment." (*Id.* ¶ 37.) Dodelson ultimately resigned in April 2018 after her business relationship with AC Holdco deteriorated. (*Id.* ¶¶ 43–44.) Around the same time, Dodelson allegedly misappropriated the company's proprietary information, established a new venture, and solicited AC Holdco employees to leave AC Holdco and join the new venture. (*Id.* ¶¶ 44–50.)

In August 2018, four months after her resignation, Dodelson filed a lawsuit against AC Holdco in the Superior Court of New Jersey "alleging, among other things, that AC Holdco had improperly withheld severance payments and stock options to which she was entitled[,] and that AC Holdco's Chairman had defamed her." (*Id.* ¶ 51.) AC Holdco, in turn, asserted counterclaims against Dodelson and her new venture "alleging, among other things, that Dodelson breached her [e]mployment [a]greement and her fiduciary duties to the [c]ompany by, among other things, misappropriating [c]ompany assets, misappropriating AC Holdco's [p]roprietary [i]nformation, and establishing a competing business during her contractual non-compete period." (*Id.* ¶ 52.) During the course of the state court action, Dodelson allegedly represented that she was neither using AC Holdco's proprietary information nor engaging in actions competitive with

2

Achieve3000. (*Id.* ¶¶ 53, 81.) Plaintiffs assert that based on those representations, they entered into a settlement agreement with Dodelson on February 25, 2020 to resolve the state court action (*Id.* ¶¶ 7, 81–82.) The settlement agreement contains mutual general releases between the parties that "released all claims between them and related entities . . . 'relating to any matter . . . from the beginning of time through [February 25, 2020].'" (*Id.* ¶ 74 (alteration in original) (citation omitted).) The agreement also includes a clause that preserves certain provisions of Dodelson's employment agreement and court orders prohibiting her from misusing the company's proprietary information. (*Id.* ¶ 76 (citation omitted).)

In May 2020, "Dodelson took the Beable website live and issued a press release announcing the launch of its new and fully formed differentiated literacy learning system"—the Beable Life-Ready Literacy System.[2] (*Id.* ¶¶ 8, 23.) According to Plaintiffs, Defendants' product "infringes Achieve3000's patent and competes with Achieve3000's core product." (*Id.* ¶ 8.)

On July 21, 2020, Plaintiffs filed the instant eleven-count action against Defendants, alleging claims (1) for patent infringement; (2) under the Lanham Act; (3) under the Defend Trade Secrets Act; (4) under the New Jersey Unfair Competition Law; (5) under the New Jersey Trade Secrets Act; (6) under the New Jersey Computer Related Offenses Act; (7) for breach of contract; (8) for breach of the implied covenant of good faith and fair dealing; (9) for fraudulent inducement; (10) for tortious interference with prospective economic advantage; and (11) for conversion and replevin. (*Id.* ¶¶ 99–204.) On October 8, 2020, Defendants filed the instant Motion to Dismiss and Motion to Take Judicial Notice. (ECF Nos. 24, 26.) Plaintiffs opposed both motions on November 2, 2020, (ECF Nos. 33, 35), and Defendants replied on November 9, 2020, ECF Nos. 37, 39.)

---

[2] Beable was formally known as Mission With a Margin, which Dodelson allegedly incorporated in January 2019. (Compl. ¶¶ 6, 58.)

3

## II.   LEGAL STANDARD

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

Federal Rule of Evidence 201(b)(2) allows a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "[W]hile the rules allow a court to take notice at any stage of the proceedings . . . it should be done sparingly at the pleading stage." *Krishanthi v. Rajaratnam*, No. 09-5395, 2010 WL 3429529, at *18 (D.N.J. Aug. 26, 2010). "Only in the clearest of cases should a district court reach outside the pleadings for facts

4

necessary to resolve a case at that point." *Id.* (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)).

## III. DISCUSSION

### A. Patent Infringement Claim

Count One alleges that the Beable Life-Ready Literacy System infringes at least claims 1 and 8 of Achieve3000's U.S. Patent No. 9,652,993 ("'993 Patent"). (Compl. ¶¶ 23, 97.) In moving to dismiss, Defendants argue that "to support an infringement cause of action, Plaintiffs must show the accused infringer performs [two] steps: obtaining the claimed outside 'unmodified content' and modifying it, both by computer." (Defs.' Moving Br. 11, ECF No. 25.) The Court disagrees.

Plaintiffs "need not 'prove [their] case at the pleading stage.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig., Inc.*, 681 F.3d 1323, 1339 (Fed Cir. 2012)). Rather, the "purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*" as Defendants seem to suggest. *Id.* (citation omitted); (Defs.' Moving Br. 11 ("Plaintiffs must show [Beable] performs both steps . . . . Beable does not perform these steps.").) A complaint sufficiently pleads a patent infringement claim when it puts "the 'potential infringer . . . on notice of what activity . . . is being accused of infringement." *Nalco*, 883 F.3d at 1350 (alterations in original) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). At this stage of litigation, the plaintiff is "entitled to all inferences in its favor on its theory [of infringement]." *Id.* at 1349.

After review, the Court finds that the Complaint sufficiently puts Defendants on notice of the alleged infringement. As noted, the Complaint alleges that the Beable Life-Ready Literacy System infringes at least claims 1 and 8 of the '993 Patent. (Compl. ¶¶ 23, 97.) Further, the

Complaint adequately details how Defendants' product allegedly meets each limitation of those claims. (*See id.* ¶¶ 99–100.) In that regard, the Complaint provides a side-by-side description of how Defendants' product allegedly meets each limitation using information found in the product's press release and website. By way of example, the Complaint provides:

> [1(b)] *obtaining in real-time, by a standards engine including one or more processors, a first unmodified content from at least one source using at least one computer*; - Beable's products are described as being part of an automated system (*e.g.*, "propelled by the BeableIQ data and automation"), and as providing lessons that are "automatically differentiated to match each student's reading ability. Beable explains on its website that these lessons that are "automatically differentiated" by its system include content from at least two sources (academic content and special content) that, on information and belief, comprises unmodified content before it is differentiated by Beable's system into multiple "just-right" versions[.]

(*Id.* ¶ 99.) That Plaintiffs used publicly available information to support their allegations does not render their pleadings insufficient. *See, e.g.*, *Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-414, 2019 WL 3546692, at *6 (D. Del. Aug. 5, 2019) (denying motion to dismiss where "[f]or each of the patents at issue, [p]laintiff describes the limitations of independent claim 1 of the patent and then details—based on public information about HAEGARDA—how HAEGARDA infringes on each limitation."). Thus, Plaintiffs have sufficiently pleaded a patent infringement claim. *See, e.g.*, *NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307, 2020 WL 616307, at *3 (D. Del. Feb. 10, 2020) (denying motion to dismiss where the plaintiffs "have specifically identified [d]efendant's Nanosys Quantum Dot Products as the infringing products and allege that they practice each limitation of at least one claim in the asserted patent.").

In their Moving Brief, Defendants argue in part that "the '993 Patent mandates that 'unmodified content' must first be identified and obtained from an *outside source* such as from 'news articles, textbook excerpts, library journals, and the like.'" (Defs.' Moving Br. 17 (citing

6

'993 7:27-29).) According to Defendants, "Plaintiffs do not identify any statement in the [p]ress [r]elease or on the website saying that Beable obtains lesson plans from an outside source like a news source as opposed to writing the lesson plans itself (the way that it actually creates lesson plans)." (*Id.* at 17–18.) In opposition, Plaintiffs argue that Defendants are "attempt[ing] to redefine the actual claim language with unsupported additional requirements." (Pls.' Opp'n Br. 26, ECF No. 33.) According to Plaintiffs, "Claims 1 and 8 simply require that the unmodified content come from 'at least one source.' The patent's specification and claims explicitly contemplate that the content may come from an internal (*e.g.*, 'proprietary') source." (*Id.* at 26 n.3.) At this juncture, however, the Court need not reach the parties' construction arguments. *See, e.g., Novartis Pharms. Corp. v. Actavis, Inc.*, No. 12-366, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012) (noting that "courts have repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss . . . the motion should be denied, because this type of analysis is inappropriate at the pleading stage.") (collecting cases). For the foregoing reasons, the Court denies Defendants' Motion to Dismiss Count One.[3]

### B.     Counts Two Through Eight, Ten, and Eleven

Defendants argue that Counts Two Through Eight, Ten, and Eleven should be dismissed because they are barred by the release contained in the settlement agreement.

---

[3] For the same reasons, Defendants' Motion to Take Judicial Notice is denied to the extent they request that the Court take judicial notice of documents in the patent prosecution file. (Judicial Notice Mot. 5–6.) In that Motion, Defendants do not explain their request for judicial notice of those documents. Instead, Defendants appear to indicate in their Motion to Dismiss that they are seeking to introduce the documents to show that Plaintiffs intended for the '993 Patent to require transforming content by computer. (Defs.' Moving Br. 9–10 ("Achieve argued to the [USPTO] that this second step, transforming content *by computer*, was critical to the patentability of the '993 Patent.").) Plaintiffs opposed this position. (Pls.' Opp'n Br. 27 n.4.) As discussed, however, the Court declines to engage in an infringement analysis at this time.

7

"Releases are treated as contracts, for 'a release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 762 (D.N.J. 2011) (quoting *Domanske v. Rapid-American Corp.*, 330 N.J. Super. 241, 246 (N.J. Super. Ct. App. Div. 2000)). Consequently, "[t]he scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances." *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 203 (1963).

Here, the settlement agreement provides, in relevant part, that Plaintiffs release Defendants from "any and all claims . . . based upon, arising out [of], in connection with, or in any way relating to any matter, thing, act or omission that has occurred from the beginning of time through [February 25, 2020]." (Settlement Agreement ¶ 3(a), *152,[4] Ex. G to Compl., ECF No. 4.) By its terms, therefore, the release covers only claims related to Defendants' conduct occurring prior to February 25, 2020. While the Complaint includes allegations of misconduct that occurred prior to February 2020, the Complaint focuses on allegations of ongoing infringement and circumstances concerning Defendants' May 2020 launch of the Beable Life-Ready Literacy System. (*See, e.g.*, Compl. ¶ 97 ("Beable has infringed and is infringing . . . by selling, offering for sale, and/or importing into the United States without authority or license, the Beable Life-Ready Literacy System, that infringes at least claims 1 and 8 of the '993 [P]atent."); *Id.* ¶¶ 120–22 (alleging false advertising in connection with Beable's May 2020 press release.). Thus, the present claims are not barred by the release because the Complaint focuses on alleged misconduct that occurred (or materialized) after the settlement agreement was executed.

---

[4] Page numbers preceded by an asterisk refer to the page number on the ECF header.

8

Moreover, as Plaintiffs note—and Defendants do not address—the settlement agreement contains a provision that incorporated by reference Dobelson's obligations under other documents that prohibited her from misusing the company's proprietary information: "Notwithstanding the foregoing or any other provision of this [s]ettlement [a]greement, the obligations set forth in paragraphs 9.1 and 9.2 of the [e]mployment [a]greement, in paragraphs 1 and 3 of the [November 2018 Consent Order], and in paragraph 10 of the [April 2019 Stipulated Protective Order], shall remain in full force and effect and a breach of any such provision shall be a material breach of this [s]ettlement [a]greement." (Pls.' Opp'n Br. 11 (quoting Settlement Agreement ¶ 6, *155–56; Compl. ¶¶ 76–81).) Plaintiffs allege that Defendants breached the settlement agreement by, among other things, "creat[ing] a direct competitor to Achieve3000 using Achieve3000's own employees and [p]roprietary [i]nformation[.]" (*See* Compl. ¶¶ 83–84, 97.) Accepting these allegations as true, the release that Defendants rely upon would be unenforceable due to their breach of the settlement agreement.[5] *See Weisman v. N.J. Dep't of Hum. Servs.*, 817 F. Supp. 2d 456, 461 (D.N.J. 2011) ("Because [d]efendants have materially breached the settlement agreement and deprived [the plaintiff] of the benefit of her bargain, [the plaintiff] is excused from performance of her obligation under the agreement to release all claims . . . ."). Based on the foregoing, the Court declines to dismiss Counts Two Through Eight, Ten, and Eleven at this time based on the settlement agreement's release.

C. **Count Nine**

Count Nine alleges that Defendants fraudulently induced Plaintiffs into settling the state court action and thus seeks recission of the settlement agreement. (Compl. ¶¶ 185–91.)

---

[5] For the same reason, and because the Court will not dismiss Plaintiffs' fraudulent inducement claim as discussed below, the Court declines to address Defendants' argument regarding New Jersey's Entire Controversy doctrine at this time.

9

Rule 9(b) imposes a "heightened pleading standard [that] requires the plaintiff to state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020) (internal quotation and citation omitted). To state a claim for common-law fraud, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

Here, Defendants argue that Plaintiffs fail to plausibly allege reliance and material misrepresentation. (Defs.' Moving Br. 32.) The Court disagrees. The Complaint sufficiently alleges, among other things, that AC Holdco entered into the settlement agreement "in detrimental reliance on Dodelson's representations . . . that Beable (a) was not competing with Achieve3000; (b) had no customers or products; and (c) had not begun to develop any products, much less products that would compete with Achieve3000." (Compl. ¶ 12.) The Complaint further alleges that "AC Holdco also relied on Dodelson's numerous prior representations throughout [the state court matter] in which she denied using the [c]ompany's proprietary information or attempting to develop products to compete with it." (*Id.*) Accepting the Complaint's allegations as true—as the Court must—Plaintiffs have adequately pled reliance and material misrepresentation.

In moving to dismiss, Defendants do not appear to challenge the sufficiency of the pleadings themselves but rather seem to contest the merits of Plaintiffs' claim. Specifically, Defendants point to documents filed in the state court matter to show that Plaintiffs did not rely on any alleged representation. (Defs.' Moving Br. 32.) In that regard, Defendants request that the

10

Court take judicial notice that Plaintiffs "disputed the statements that they now argue they relied upon into entering into a settlement agreement with Dodelson." (Judicial Notice Mot. 3.) Defendants also seek to introduce excerpts from the deposition testimony of a current Beable employee "to establish that [Plaintiffs] were on notice of matters that they now claim they did not know when they signed [the] settlement agreement[.]" (*Id.* at 5.) Defendants request is improper. Whether Plaintiffs relied on Defendants' alleged misrepresentation remains a disputed issue of fact. As Plaintiffs note, to consider the evidence submitted by Defendants would improperly require the Court to take judicial notice of factual inferences based on the substance of those documents, and then make dispositive findings as to disputed facts. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 398 (3d Cir. 2000) (noting the district court should not have taken judicial notice of "factual assumptions" outside the complaint because "Rule 12(b)(6) instructs that the [d]istrict [c]ourt draw inferences in favor of plaintiffs, not the proponent of the motion."). Once again, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. Moreover, the Court must accept the Complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor. Consequently, the Court also denies Defendants' judicial notice request as to the state court filings. The Court also denies Defendants' Motion to Dismiss Count Nine.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motions are denied. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**